Argued October 26, 1971, resubmitted February 22, reversed and
remanded March 30, 1972

## STATE OF OREGON, *Respondent, v.*
## FRANK DANIEL BARTOLON, *Appellant.*

495 P2d 772

*Julian Herndon, Jr.,* Portland, argued the cause for appellant. On the brief were Herndon & Ofelt, Portland.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

LANGTRY, J.

Defendant was charged with the first degree murder of his wife on January 23, 1970. Upon its finding that there was failure of proof as to premeditation and malice, the trial court removed first and second degree murder and voluntary manslaughter from consideration of the jury, but submitted to it the included offense of involuntary manslaughter. A finding of fact whether the defendant was engaged in an unlawful act, namely, purposely pointing a firearm at

his wife, ORS 163.320, or a lawful act "without due caution or circumspection" under ORS 163.040 (2), at the time the revolver he held fired and killed his wife, was the basic question for the jury. The jury convicted and this appeal is from the resulting judgment.

Defendant alleges errors in these respects:

(1)(a). Hearsay testimony to show the state of mind of the decedent should not have been received.

(b). The court should not have allowed the prosecutor to comment in final argument on such hearsay evidence.

(2). The court erred in giving the statutory instruction that an unlawful act is presumed to have been done with an unlawful intent. ORS 41.360 (2).

(3). A conviction on less than an unanimous verdict should not have been allowed.

(4). ORS 163.040 (2) is unconstitutional; therefore, a conviction should not have been allowed under this statute.

■ With reference to claimed error (3), the defendant's contention is disposed of by the opinion in *State v. Gann,* 254 Or 549, 463 P2d 570 (1969); with reference to (4), no objection was made upon this ground in the trial court so we will not consider it upon appeal.

■ On January 23, 1970, the defendant shot and killed his wife in their home. He immediately called police who found Mrs. Bartolon dead in a chair at the kitchen table. She had a gunshot wound through her left eye into the brain. Defendant told them that he was showing the gun to his wife when it fired and struck her.

In his testimony he said that he had gone to the basement to get the gun to show his wife how to use it for her protection:

"I took the gun upstairs. Went and laid the bullets down, put the gun down on the table and I said, 'This is what you call a gun.'

"And she says, 'I know and I don't like it.'

"* * * The more I talked to her, the more I was able to persuade her that possibly it wouldn't be too bad an idea to have it in the house * * *.

"* * * * *

"I started to rise * * * and as I picked the gun up, that's when it happened.

"I guess I did [pull the trigger] to make it clear to her that noise that lets you know you pulled the trigger.

"* * * * *

"Q. * * * Did you intentionally point it at her?

"A. I didn't think it was pointed at her * * *. I just raised the gun up as I was coming up * * * in somewhat of a hurry * * *."

On cross-examination he said, "* * * My statement when I pulled the trigger was 'And that's all you have to do, just like that.' "

Part of the evidence produced by the state was testimony from friends of the deceased about marital discord between the defendant and the deceased during their nine-month marriage. The testimony of Clara Roslyn was to the effect that she had been told by the deceased at a time which was necessarily only two or three weeks before the fatal shooting that defendant, "* * * went down in the basement and when he came back up he pointed a gun at her and she said,

'Don't—' and then 'Go ahead and shoot. I don't care.' She said she had no idea he ever had a gun and from then on, she was afraid."

This evidence and other to the same general effect (none other than that quoted above was about a gun) was received as tending to show the state of mind of the deceased prior to the shooting. All of it came in during the state's case and before murder and voluntary manslaughter were removed from the jury's consideration.

The court removed murder and voluntary manslaughter from the jury's consideration after both sides had rested. Counsel then proceeded with argument. In the prosecutor's closing argument, he said:

> "* * * Patty [the deceased] told Clara [Roslyn] that two weeks before that, they had had an argument and he pointed a gun at her."

Defendant's counsel interrupted with an objection and moved for a mistrial because, he said, that evidence was not admitted "for that purpose; that it was hearsay as to any purpose that he actually pointed the gun." The court then stated in the jury's presence that the only purpose of the evidence about which the prosecutor had commented was to show the state of mind of the deceased and denied the motion. The prosecutor went on:

> "* * * but then she tells Clara 'I was afraid.' Now, that's what we are talking about. If she is afraid at that point and he is waving a gun around, you'd think that she would be moving out of the way, wouldn't you, unless there is an actual pointing? * * *

> "* * * * *

> "* * * Did he point it purposely?"

The statute which defines the unlawful act defendant was accused of committing provides that, "Any person \* \* \* who, with or without malice, purposely points \* \* \* any loaded or empty \* \* \* firearm \* \* \* at \* \* \* any other person \* \* \*" is guilty of a misdemeanor. ORS 163.320 (now ORS 166.190). When we compare the substance of the prosecutor's argument to the jury, which we have drawn from the transcript and quoted above, with the substance of the statute, quoted above, it becomes apparent that the prosecutor was attempting to get the jury to conclude that all of the hearsay statement which Clara Roslyn repeated in evidence proved defendant's purposefulness in pointing the firearm at his wife. The state of mind, that is, the deceased's fear of guns, as expressed in the Roslyn testimony was, at most, a minimal element to be weighed in the fact determination of whether the pointing was purposeful. A larger element which was inherent in the hearsay and the argument was that the defendant had once purposely pointed a gun at deceased; therefore, he must have been doing the same thing when she was killed.

At the time the hearsay evidence was received the trial court held it was relevant because it was evidence of a state of mind of deceased and falls under an exception to the hearsay rule. The basis for such a ruling would necessarily be found in cases such as *State v. Farnam,* 82 Or 211, 161 P 417, 18A Ann Cas 1918A, 318 (1916) ; *State v. Fong,* 211 Or 1, 21-22, 314 P2d 243 (1957) ; and *State v. Shirley,* 7 Or App 166, 170-71, 488 P2d 1401 (1971) Sup Ct *review denied* (1972). If the evidence was properly received it is questionable whether the trial court should have removed second degree murder and voluntary man-

slaughter from the jury's consideration. The reason we say this is because the evidence, if it was properly received, was some indirect evidence of defendant's purposefulness and malice, that is, his state of mind. This being so, the weight it should be accorded would be a jury question. However, we do not think that the evidence was properly received in the first instance.

■ As noted above, the reason for receiving such hearsay evidence is that it comes under an exception to the rule excluding hearsay, which is called the "state-of-mind" exception.[①] In *State v. Farnam,*

---

[①] Text writers sometimes divide hearsay statements about state of mind into categories, which we find a difficult concept. Thus, in 6 Wigmore, Evidence 237-238-239, § 1790 (1940), the author speaks of utterances evidencing the speaker's state of mind as being in the category of circumstantial evidence. In Section 1730, pp 93-94, Wigmore refers to such statements as being admissible under the state-of-mind exception to the hearsay rule and also as circumstantial evidence. In Section 1776, p 178, he says that if such a statement is offered *"without reference to the truth of the matter asserted,"* it is not obnoxious to the hearsay rule, but may or may not be received, "according as it has any relevancy in the case * * *."

In McCormick, Evidence 464-65, 468, § 228, the author makes somewhat similar statements about such evidence and says that a more flexible and discretionary standard for the admission of evidence of out-of-court declarations is needed, and that the tendency toward use of the theory of verbal conduct as circumstantial evidence is a wholesome trend.

Regardless of these text writers' assertions, we feel bound by the law to which we refer in text. The basis of our reasoning is well expressed in People v. Hamilton, 55 Cal2d 881, 13 Cal Rptr 649, 362 P2d 473 (1961), and People v. Lew, 68 Cal2d 774, 69 Cal Rptr 102, 441 P2d 942 (1968). In *Hamilton* defendant was accused of his wife's murder. Hearsay evidence of deceased's statement that defendant had beaten and threatened to kill her were received. With respect to this evidence the court said:

"Undoubtedly, in a proper case, and in a proper manner, testimony as to the 'state of mind' of the declarant, where there is an issue in the case is admissible, but only when such testimony refers to threats as to future conduct on the part of the accused, where such declarations are shown to have been

made under circumstances indicating that they are reasonably trustworthy, and when they show primarily the then state of mind of the declarant and not the state of mind of the accused. But there are and should be rigid limitations on the admission of such testimony. One of these limitations is that such testimony is not admissible if it refers solely to alleged past conduct on the part of the accused. This is so because to try and separate state of mind from the truth of the charges is an almost impossible task. The serious prejudice from such evidence is obvious. When the declarations are of such a nature as to be obviously prejudicial, and where any possible proper benefit to the prosecution is far outweighed by its prejudicial effect to the accused, such evidence should be excluded * * *.

"* * * * * *

"* * * In such cases [where the hearsay refers to past acts of the defendant] the authorities are agreed that it is impossible for the jury to separate the state of mind of the declarant from the truth of the facts contained in the declarations, and that for such reasons such declarations are inadmissible. * * *." 55 Cal2d at 893-94-95.

In People v. Lew, 63 Cal Rptr 632 (1967), vacated 68 Cal2d 774, 69 Cal Rptr 102, 441 P2d 942 (1968), the Supreme Court of California, in a case where the state-of-mind declarations of the decedent woman about fear of guns were much in point with those of the instant case, said:

"* * * We thus conclude that Karen's expressions of fear were relevant to an issue of fact raised by the defense, i.e., whether Karen was willing to handle the gun, as defendant asserted.

"We are nevertheless persuaded that the statements should have been excluded from evidence. In People v. Hamilton (1961) supra, 55 Cal.2d 881, 893-896, we said that statements indicating a declarant's state of mind cannot be admitted into evidence unless exacting standards are met. An initial requirement is 'that such testimony is not admissible if it refers solely to alleged past conduct on the part of the accused. This is so because to try and separate state of mind from the truth of the charges is an almost impossible task.' * * * A second requirement, equally important, is that there must be 'at least circumstantial evidence that [the statements] are probably trustworthy and credible.' * * *

"In this case neither requirement was fulfilled. Most of the statements made by Karen refer to past conduct of defendant: the drawing of the gun in the parking lot * * *." 68 Cal 2d at 780.

supra, the evidence received under this exception was a statement the deceased made to a friend to the effect that she intended to meet the defendant that night. The morning after that a burned body, which other evidence indicated was hers, was found in a burned barn, which appears to have been the place where the meeting was planned. The hearsay evidence thus received was that her state of mind was a design or plan that she was going to meet defendant. The legitimate evidentiary value was that she probably did what she said she planned to do. The hearsay was a statement "of a present existing state of mind [which was admissible], when made in a natural manner and under circumstances dispelling suspicion and containing no suggestion of sinister motives * * *." 82 Or at 250-51. Use of such statements under such circumstances is common to show that the declarant probably carried out a mental state or plan, *he* said he had. See McCormick, Evidence 572, § 270 (1954).

In *State v. Fong,* supra, deceased had told friends that she was cognizant that defendant was dealing in narcotics. The Supreme Court held, in dictum, that these statements, repeated by the witnesses, were admissible, "* * * not to prove that the defendant * * * dealt in narcotics, but show the state of mind of the deceased and her knowledge of these alleged illegal activities * * *." 211 Or at 21-22. Other evidence in the case showed that the defendant had made statements, as to whom they were admissions against interest, which indicated that he knew the deceased was aware of his narcotic dealings. The hearsay evidence of deceased's knowledge of the defendant's illegal activities was a link in the chain of evidence which proved motive for murder. It is closer to the situation in the case at bar than was *Farnam,* but still

the declaration of decedent in *Fong,* repeated by witnesses, was solely about her state of mind and did not recite factual details which gave rise to her state of mind.

■ The instant case is distinguishable because the hearsay statement in evidence attributable to the deceased specifically referred to the alleged fact that the defendant had at a certain time pointed a gun at the deceased. Her declaration that she was afraid after that is an inseparable part of the entire hearsay statement. The statement constitutes evidence of another misdemeanor crime—that is, evidence of purposely pointing a firearm at another in violation of ORS 163.320. Additionally, it could be construed as evidencing another possible felony then existing under Oregon law—threatening the commission of a felony. ORS 161.330 (repealed Oregon Laws 1971, ch 743, § 432). As such, we construe its prejudicial effects as outweighing its rather tenuous value in support of the prosecutor's argument that because it showed deceased was afraid of guns, she wouldn't be sitting still while defendant was "waving" the gun around. *Cf.* McCormick, Evidence 136, § 59 n 5, and the quotation from *People v. Hamilton* in n 1. True, if it did not violate the hearsay rule it would have been competent to show malice. See McCormick, Evidence 328-29, 330, § 157. However, it is hearsay and we find it is not the kind of statement that could bring it under any exception to the hearsay rule.

The defense objection to the prosecutor's jury argument was a continuation of consistent objections made by defense counsel from the time the hearsay evidence was first offered. The admission of the evidence was prejudicial, requiring reversal and remand

for a new trial. A jury, under evidence produced in the first trial, could find the defendant guilty of involuntary manslaughter on the allegation that the defendant was doing a dangerous act—demonstrating the gun to his wife—without due caution and circumspection, a crime under then existing ORS 163.040 (2). (A new statute would apply to such an act presently committed.)

■ Because the case must be tried again another assignment of error merits consideration. Defendant contends that the statutory presumption repeated in instructions "that an unlawful act is done with an unlawful intent" was a legally defective instruction. Defendant's counsel specifically excepted to the giving of this instruction and argues that it removed from the jury's consideration an essential fact which it was incumbent upon the state to prove; that the defendant did in fact intend to point a gun at another human being. The instruction is based upon ORS 41.360 (2):

> ORS 41.360. "All presumptions other than conclusive presumptions are satisfactory, unless overcome. They are disputable presumptions, and may be controverted by other evidence, direct or indirect, but unless so overcome, the jury is bound to find according to the presumption. The following are of that kind:
> "* * * * *
> "(2) An unlawful act was done with an unlawful intent.
> "* * * * *"

This presumption has been in one Oregon statute or another since 1862. Instructions based upon it have been given in most appropriate criminal cases since then. Its use has been approved by the Oregon Su-

preme Court. For example, in *State v. Butchek,* 121 Or 141, 157, 253 P 367, 254 P 805 (1927), the court said:

"\* \* \* [T]he law wisely calls to its aid in the administration of justice presumptive evidence. The trial begins with the presumption of the defendant's innocence. But, upon the proof of the commission of an unlawful act, the presumption is that such act 'was done with an unlawful intent,' \* \* \* ."

Use of ORS 41.360 as the basis for jury instructions defining other disputable presumptions set out in other subsections of that statute were critically analyzed in the opinion of the court and the dissent in *U. S. National Bank v. Lloyd's,* 239 Or 298, 382 P2d 851, 396 P2d 765 (1964). The most recent criticism called to our attention of an instruction based on ORS 41.360 (2) came from the Ninth Circuit Court of Appeals in *Colson v. Cupp,* 449 F2d 730 (1971). There, referring to the same instruction as that questioned here, the court said:

"Aside from the use of the language of presumption, the instruction was erroneous because the second sentence is hopelessly circuitous. When the lawfulness of an act depends upon the *guilty intent* with which the act was done, it is patently wrong to tell a jury that it can infer the requisite intent simply from proof that a defendant did the act \* \* \* ." (Emphasis supplied.) *Colson v. Cupp,* 449 F2d at 731.

■ ■ In the case at bar the word "purposely" in ORS 163.320 is not used in the sense of "guilty intent" to kill or physically harm another. Rather, the offense is in the act of purposely pointing the gun, regardless of what the intention of the one doing the pointing may thereafter be. A person may, with a mistaken

sense of humor, purposely point a gun at another and have no "guilty intent" at all, but yet violate ORS 163.320 (now ORS 166.190). We think the criticism directed at the instruction in the case at bar would not, alone, have indicated reversal. Nevertheless, the use of this statutory instruction is subject to justified and logical criticism in many if not most of the cases where it traditionally has been used. It is no criticism of trial judges that they have used an instruction imposed upon them by statute and approved by the Oregon Supreme Court. In any event, the wise course is not to give this instruction.

Reversed and remanded for a new trial.