**STATE of Missouri, Respondent,**

v.

**Herbert Lee TROTTER, Appellant.**

No. 36764.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 13, 1976.

Motion for Rehearing to Court En Banc
or for Transfer Denied May 17, 1976.

Preston Dean, Nanette Laughrey, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for respondent.

Graham W. LaBeaume, St. Louis, for appellant.

CLEMENS, Presiding Judge.

A jury found defendant Herbert Trotter guilty of second degree murder by twice shooting Eugene Smith. The jury could not agree on punishment and the trial court sentenced Trotter to 35 years' imprisonment.

Defendant Trotter appeals, contending error in permitting the State to cross examine its own witness, by allowing the State's eyewitness to relate threats made against her, and the trial court's failure to instruct on manslaughter. We relate the evidence relative to these points, all from the State's case. The defense was an alibi.

The decedent Eugene Smith lived with Ernestine Branom, the State's main witness. She testified that on the evening of March 2, 1974 defendant Trotter and Robert Branom, Ernestine's brother and a co-indictee, came by the Smith home and quarrelled with him about a hat. Defendant Trotter and Robert Branom came back about midnight and when Eugene Smith opened the door, Ernestine Branom saw Trotter shoot Smith and again shoot him when he fell. Her brother, a co-indictee, was then standing behind Trotter. Also, a neighbor saw Trotter firing a pistol toward the floor. Ernestine Branom ran from the house, with Trotter pursuing, but she evaded him.

At trial Ernestine testified she had not seen a gun, that both of defendant's hands were empty when the shots were fired. Upon a showing Ernestine's testimony was a surprise and admittedly contrary to earlier statements made to police, the grand jury and the prosecutor, the court allowed the State to cross examine her. The State recalled Ernestine to the stand. She explained her initial false testimony about defendant not having a gun was caused by

fear of defendant's relatives then in the courtroom, they having previously threatened her. Ernestine testified she had in fact seen defendant Trotter with a gun in hand, saw him shoot Smith once, and when he fell, shoot him again.

■ I. Defendant now contends: "It was error for the court to declare Ernestine Branom a hostile witness. A witness may not be declared hostile unless the discrepancy is so major as to make the person a witness for the adverse side." Defendant relies on Ernestine's initial testimony that Trotter did not have a gun. We find there was a major discrepancy in Ernestine's initial testimony that defendant's hands were empty and her previous formal, out-of-court statements that Trotter held the gun in his hand. Not only did this warrant the trial court's considering Ernestine's initial testimony to have been untrue, the trial court could also consider that Robert Branom, the co-indictee, standing behind Trotter, was her brother. If Ernestine's initial testimony did not show her to be hostile, it did show her to be reluctant in view of her earlier extrajudicial statements. Compare State v. Davis, 400 S.W.2d 141[7–10] (Mo. 1966). The trial court's ruling here is akin to that in State v. Rack, 318 S.W.2d 211[10–11] (Mo.1958), where the court declared: "A trial court may, within its discretion, permit cross-examination of a party's own witness where there is a basis of surprise and where the witness is evidently friendly to the other side and has made statements contrary to his testimony at the trial. A trial court may exercise its discretion in such circumstances."

We deny defendant's point concerning the prosecution's cross examination of witness Ernestine Brown.

■ II. Defendant challenges as hearsay the testimony of eyewitness Ernestine Branom that members of defendant's family had put her in fear of testifying truthfully.

Recall the discrepancy between Ernestine's initial testimony that she saw no gun

and her later testimony that in fact she did see a gun in defendant's hand when he shot Smith. In cross examining Ernestine the State sought to explain the discrepancy. Ernestine confessed when recalled that she had lied about not seeing the gun since she was frightened because defendant's father, mother and family were then in the courtroom. The State sought to have Ernestine explain her fear. She testified that the day after the shooting defendant's father told her she had better go to the police and "get that off his son." Defendant's sister told Ernestine if she didn't do that, "we'd better leave town." Ernestine further testified that her brother-in-law had told her defendant's father had offered to pay $100 if she would change her account of the shooting.

We consider this testimony in the light of the trial court's ruling that the State had a right to cross examine Ernestine about her earlier testimony, confessedly false. Her state of mind, when she first testified falsely, was relevant to her testimony as a whole. *Terminal R.R. Ass'n of St. Louis v. Schmidt,* 349 Mo. 890, 163 S.W.2d 772[2] (1942). That state of mind was caused by statements attributed to defendant's father and sister. The State did not offer those statements for their intrinsic truth but as direct evidence of the statements having been made.

■ There is a distinction between the hearsay rule prohibiting a witness from relating another person's statements for their intrinsic truth and a witness relating another's declarations, not for their intrinsic truth, but for the evidentiary fact, when relevant, that the statement was made.[1]

The limited scope of the hearsay rule was noted in *In Re Thomasson's Estate,* 347 Mo. 748, 148 S.W.2d 757[10] (Mo.1941), the court saying: "The [hearsay] argument, however, fails to consider the fundamental distinction between hearsay statements and extrajudicial utterances admitted not for the purpose of proving the fact therein asserted to be

true, but simply because the statements themselves formed necessary links in a chain of circumstantial evidence. This distinction has been most carefully stated in Wigmore on Evidence, 3d Ed., § 1766: 'The theory of the Hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the Hearsay rule does not apply. . . . It may or may not be received, according as it has any relevancy in the case.'" Wigmore adds: "The prohibition of the Hearsay rule, then, *does not apply to all words or utterances merely as such.* If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*"

For other applications of the principle see *State v. Hale,* 371 S.W.2d 249[7–8] (Mo. 1963), *Mitchell v. Robinson,* 360 S.W.2d 673[3–4] (Mo.1962) and *Mash v. Missouri Pacific Railroad Co.,* 341 S.W.2d 822[4] (Mo. 1960). We deny defendant's hearsay point.

■ III. Defendant contends the trial court erred in failing to instruct on manslaughter. He cites *State v. Stapleton,* 518 S.W.2d 292 (Mo.1975) as holding that where a trial court instructs on second degree murder it must also instruct on manslaughter. Trial of this case was on April 5, 1974. *Stapleton* was decided January 13, 1975, simultaneously with amended Notes on Use to MAI-CR 6.06 (Murder Second Degree) and MAI-CR 6.08 (Manslaughter), expressly applicable to *future* homicide cases. As to this, *Stapleton* is to be applied prospective-

---

1. A Hornbook example: The hearsay rule is inapplicable in an insanity hearing where a witness may relate the subject's statement, "I

am the Pope," offered not for its intrinsic truth but to show the subject's state of mind.

ly. *State v. Mudgett*, 531 S.W.2d 275[5] (Mo.1975); *State v. Eiland*, 534 S.W.2d 814, 1976. We revert to the pre-Stapleton rule that a manslaughter instruction may properly be given only when warranted by the evidence. *State v. Clough*, 327 Mo. 700, 38 S.W.2d 36[1–2] (1931). Here there was no affirmative evidentiary basis for a manslaughter instruction.

Judgment affirmed.

DOWD and STEWART, JJ., concur.