STATE of Missouri,
Plaintiff-Respondent,

v.

Henry MILLER, Defendant-Appellant.

No. 45884.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 20, 1983.

Motion for Rehearing and/or Transfer
to Supreme Court Denied Jan. 24, 1984.

Karl F. Lang, St. Louis, for defendant-appellant.

Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Defendant Henry Miller was charged with capital murder, § 565.001, RSMo 1978, of his twenty-one-year-old wife, Barbara Miller, by stabbing her in the stomach. Before trial the state waived the death penalty. The jury found defendant guilty of murder in the second degree, § 565.004, RSMo 1978, but in the second or sentencing stage was unable to agree on punishment. The court sentenced defendant to forty years imprisonment.

Defendant first contends he is entitled to a new trial because the trial court should have sustained his timely hearsay objection to Cathy Boulcault's testimony that the deceased had told Boulcault that defendant on separate occasions had broken her tooth, broken her arm, and stabbed her in the back. We find merit to defendant's contention and reverse.

The defendant and Barbara Miller were married in February, 1977. They had been separated for less than a week when, on August 26, 1981, Barbara came to the Miller apartment to get some baby clothes for their child. Cathy Boulcault, defendant's sister and Barbara's friend, lived downstairs from the Millers. She heard conversation

in the Millers' apartment and called there on the phone. Defendant answered and invited her to come upstairs. There she found Barbara lying crossways on a bed with the fatal stomach wound. Defendant left the apartment and was apprehended by the police the next day in Indiana.

Defendant's theory, largely based upon his own testimony, was that his wife brought the weapon with her to the apartment and approached him with it. When he tried to take it from her they both fell to the floor whereby she was accidentally stabbed in the stomach.

Defendant's first point is directed at the admission of the following testimony of Cathy Boulcault on the state's redirect examination:

Q. Now did she [Barbara] suffer a broken tooth at one time?

A. Yes, she did.

Q. How long ago was this?

. . . .

Q. How long ago was that?

A. It's been a couple years ago.

Q. Do you know who did that?

A. She said Junior [defendant] did.

. . . .

Q. Did she suffer a broken arm?

A. Yes, she did.

Q. When was that?

A. Oh, maybe three years ago.

. . . .

Q. Where did that happen, you know?

A. At her mother's house.

Q. Who did that?

A. She said he did, Junior.

Q. Had she ever been stabbed before?

A. Yes.

Q. Stabbed in the back.

A. Yes.

Q. Who did that?

A. She said Junior did.

These prior injuries were not matters raised on original direct examination or on cross-examination. Defendant's cross-examination, however, suggested that Barbara came to the Miller apartment on the day of her death carrying a large purse, which contained a ten-inch-blade butcher knife. These questions and answers on redirect were interspersed with defendant's objections as to relevancy, materiality, and hearsay, all of which were overruled.

■ Hearsay is the only objection both made at trial and presented in defendant's point on appeal. The testimony tended to prove that defendant broke Barbara's tooth and arm and stabbed her. Regarding each injury the prosecution asked Boulcault "Who did that?" and each time she responded that the decedent told her that "Junior" did. All three responses were hearsay.[1] *See State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981). The state, relying on *State v. Singh,* 586 S.W.2d 410 (Mo.App. 1979) argued to the trial court and here argues that the statements were admissible under the state of mind exception to the hearsay rule. "[T]he preponderance of authority is that, subject to limitations, the declarations of the decedent in a homicide case will be admitted to prove the decedent's state of mind where that is relevant." *Singh,* 586 S.W.2d at 417; *see also State v. Ford,* 639 S.W.2d 573, 574 (Mo. 1982).[2]

Because defendant claimed Barbara had initiated a confrontation with him and was killed accidentally her state of mind was relevant. The state presented no evidence, however, to connect defendant's alleged prior acts against Barbara, remote in time, with her state of mind on August 26, 1981.

The state and the trial court's reliance on *Singh* is misplaced. Singh was convicted of manslaughter in his wife's death. His defense was accident. According to Singh, his wife reached for a gun in his pocket, and

---

1. The testimony was offered to prove the truth of the matter asserted therein. Even under the state's theory, only if the jury first believed defendant committed these acts could it begin to consider whether the acts were relevant to decedent's state of mind.

2. For a thorough discussion of the application of this exception to the hearsay rule, see *United States v. Brown,* 490 F.2d 758 (D.C.Cir.1973).

the gun fired, killing her. On rebuttal the court admitted a neighbor's testimony that three days before the shooting the deceased told her that she was afraid of guns, would not have guns in her home, and had learned her husband had a gun. In *Singh* the decedent's statements were all made shortly before her death and were specific as to her fear of guns. Thus they were an avoidance of defendant's claim that she was attempting to secure his gun from his pocket.

■ In this case the decedent's statements were in regard to injuries several years before her death and were not proof that on August 26, 1981 she was either afraid of defendant or of knives and would not have approached him with a knife. The hearsay testimony made no direct reference to Barbara's state of mind but merely accused defendant of prior acts against her. The thrust of the testimony was toward defendant's conduct remote in time rather than, as in *Singh,* toward decedent's state of mind shortly before her death. Unlike *Singh,* the testimony here was presented in the state's case in chief not in rebuttal, and no limiting jury instruction was given.[3] The state's questions elicited hearsay which did not come under the state of mind exception. The trial court erred in overruling defendant's hearsay objection.

■ We must determine whether the error was prejudicial. It is an unfair trial, not an imperfect trial, that requires appellate intervention. *State v. Smith,* 534 S.W.2d 604, 608 (Mo.App.1976). Harmless error is not grounds for reversal. *State v. Wright,* 582 S.W.2d 275, 277 (Mo. banc 1979). However error in the admission of evidence should not be declared harmless unless it is so beyond a reasonable doubt. *State v. Miller,* 650 S.W.2d 619, 621 (Mo. banc 1983).

■ Defendant was being tried for the stabbing death of his wife. The subject of the hearsay testimony was prior violent attacks by defendant upon his wife. Because of the nature of the evidence defendant had no opportunity to confront the declarant [the deceased] or to cross-examine her.[4] Boulcault's testimony redirected the entire course of the trial to the question of defendant's culpability for a broken tooth, a broken arm, and a back wound and away from the issue of guilt or innocence of this charge. The obvious purpose of the evidence was to prove that decedent's death was not an accident, whatever her state of mind, because these three other incidents were not accidents. There is no reason to conclude the jurors did not view the evidence in this light. *See Shepard v. United States,* 290 U.S. 96, 103, 54 S.Ct. 22, 25, 78 L.Ed. 196, 201 (1933). The hearsay evidence was highly prejudicial and defendant is entitled to a new trial on second degree murder.

We need not consider defendant's second contention, that it was error to have a bifurcated trial under § 565.006, RSMo 1978, where capital murder was charged but the state waived the death penalty before trial. It cannot reoccur on retrial where the capital murder charge is no longer in the case. *State v. Bradshaw,* 593 S.W.2d 562, 566 (Mo.App.1979).

The judgment of the circuit court is reversed and the cause remanded for a new trial.

REINHARD and CRANDALL, JJ., concur.

---

3. We do not mean to imply that a jury instruction could have made the testimony admissible here.

4. We do not decide whether direct evidence, rather than hearsay testimony, of defendant's prior acts would have been admissible.