**STATE of Missouri, Plaintiff-Respondent,**

v.

**Maurice L. FULLER, Defendant-Appellant.**

No. 45646.

Supreme Court of Missouri.

Division No. 1.

June 10, 1957.

Shaw & Smith, Clayton, for defendant-appellant.

John M. Dalton, Atty. Gen., Winston Cook, Sp. Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Defendant, Maurice L. Fuller, was charged with the murder (second degree) of Larry Fertig. Upon trial he was found guilty of manslaughter and his punishment fixed at a fine of $500 and imprisonment in the county jail for a period of twelve months. He appeals from the ensuing judgment.

According to the evidence for the State it appears that deceased died shortly after

the termination of a fight which occurred between defendant and deceased, at about 2 a. m. on January 29, 1955, at the home of Hazel and Frederick Ballman in St. Louis County, Missouri. An autopsy revealed that deceased had numerous bruises and abrasions upon his face and head, it being of particular significance that there were deep bruises below each ear. In the opinion of the pathologist death was caused by a hemorrhage at the base of the brain. He was of the further opinion that the injuries in this area of the neck and skull could possibly have been caused by a fist, but he "felt that it was a broader, a blunter object moving at a greater force that was responsible."

For about a year before the instant occurrence defendant and Mrs. Ballman had been "dating" with some regularity and upon occasions had been sexually intimate. Each was married and had children and during this time continued to live with his respective spouse. On the afternoon of January 28 defendant called Mrs. Ballman and asked where she would be that evening and she gave him the address of a tavern on Delmar Avenue.

Larry, the deceased, had been a friend of the Ballmans for years, and on the evening in question had eaten dinner with them at their home. After dinner they went out "on the town" and spent the evening drinking beer in various taverns. They were driven from place to place by Mrs. Ballman in her car. At about 1:30 a. m. they returned to the Ballman home. Shortly before their arrival Mr. Ballman had noticed a car following them. The car stopped in front of the Ballman home and the defendant got out. Mrs. Ballman asked defendant to come in and have a drink. Mr. Ballman, however, told him to go on home.

The deceased entered the Ballman home first and apparently took off his topcoat and went into the bathroom. Mrs. Ballman entered the front door next with her husband just behind her. Defendant was following them. When Mr. Ballman reached the front door he turned and told defendant that he wasn't coming in. He then pushed him out of the doorway and slammed and locked the storm door. Defendant then kicked the storm door and broke out one or more of the panes of glass. Shortly thereafter Larry came out of the house and the fight between him and defendant occurred. Immediately after entering the house Mr. Ballman called the police and he and Mrs. Ballman remained in the house until the fight was concluded.

Mr. Bogstahl, who lived next door, was awakened by the noise and witnessed much of the fight. He stated that he first saw them fighting on the front porch but as the fight progressed they moved along the areaway between the two houses and the fight was concluded in the area at the rear of the Ballman residence. Perhaps the most significant testimony of this witness was his statement that at one time the participant answering the description of the defendant had the other person pinned against the wall of the Ballman residence "punching him to the wall, back and forth, * * * ramming the other man against the house."

At the conclusion of the fight Larry was either dead or unconscious and defendant returned to the front porch of the Ballman home. At about this time the police arrived and defendant was taken into custody and deceased was taken by ambulance to the St. Louis County Hospital. While it does not definitely appear in the transcript, we gather from all of the testimony that Larry was found to be dead upon arrival at the hospital.

Defendant was taken to the Webster Groves police station where he was questioned by police officers and David Godfrey, an assistant prosecuting attorney of St. Louis County. At that time defendant signed a written statement which was admitted in evidence at the trial. In this statement, after detailing his close relationship with Mrs. Ballman, defendant stated that he had spent the evening of Jan-

uary 28 drinking at a number of taverns; that about 1:30 a. m. he was driving on Highway 66 when he saw Mrs. Ballman's car pass. He saw no one except Mrs. Ballman in the car and followed the car to her home. After everyone got out of the cars he did not remember anything being said, but he followed the other three to the front door and further stated, "Mr. Ballman must have locked the door, so I kicked the storm door and broke a window. This fellow and I immediately got into a fight. I don't think either of us said anything to the other before the fight. Before I knew what happened, this fellow Larry was all over me. I don't know who struck the first blow. We fought all across the side of the house to the rear of the house. We both fell to the ground and during the fight I'm not sure if I kicked him or not. I saw he was lying down on the ground and when [he] stopped fighting me any longer I started walking to the front of the house."

Defendant testified at the trial. He stated that on the occasion in question Mrs. Ballman invited him in for a drink and that Mr. Ballman told him to go on home as he pushed him out of the door; that after he had kicked the glass out of the storm door he turned to go to his car and someone hit him and knocked him down, his assailant then saying several times, "I'll kill you first." The fight then ensued. He stated further that he had met Larry Fertig casually about six months before and there had been no difficulties or ill feeling between them. The evidence also disclosed that Fertig was somewhat heavier than defendant.

The first point briefed by defendant is that the trial court erred in overruling his motion for a judgment of acquittal. In support of this contention it is said that the State's evidence failed to show who was the aggressor in the fight and, in fact, showed that defendant was engaged in the fight in the defense of himself.

In determining the sufficiency of the evidence to support a conviction we consider only the evidence favorable to the State and such favorable inferences as may be reasonably drawn therefrom, disregarding evidence that may be unfavorable to the State. State v. Shriver, Mo.Sup., 275 S.W.2d 304. Under the particular facts shown in the instant case we do not think it was essential for the State to prove that defendant struck the first blow after deceased went upon the porch. It should be noted that defendant had admittedly committed an act of violence in kicking the glass out of the storm door of the Ballman residence. Mrs. Bergman, the baby sitter, testified that immediately thereafter she saw a hand reach through the opening in the storm door and unlatch it. The jury could reasonably have found that the foregoing wrongful conduct on the part of the defendant had caused the deceased to go upon the front porch for some purpose connected with defendant's conduct, and, but for such acts the fight would not have occurred. Thus, the jury could reasonably have found that the defendant had brought on the encounter between himself and deceased.

In State v. Reeves, Mo.Sup., 195 S.W. 1027, 1029, the court stated: "In giving this instruction the court failed to apply the principle, frequently recognized in this state, that although one may bring on or voluntarily enter a quarrel, and may entertain some unlawful purpose in doing so such as to commit a common assault or a disturbance of the peace, and in the fight which ensues, if he is assaulted with such violence that it becomes necessary in saving his own life to take the life of another, then he is not guilty of murder, but only of manslaughter; that is, in circumstances where he may be justified in killing another because it was necessary in self-defense, if he had no agency in starting the trouble, he would be guilty of manslaughter instead of being entitled to acquittal if he had brought on the difficulty with some unlawful purpose short of an intended felony." Since

the jury could reasonably have found that the wrongful conduct of defendant provoked the difficulty, then, even if we assume that deceased thereafter attacked defendant and that it became necessary for defendant to take the life of deceased in order to save his own, he would nevertheless be guilty of manslaughter. That precise theory was submitted to the jury in Instruction No. 5 of which no complaint has been made by the defendant upon this appeal. In this connection it should also be noted that there is nothing in the State's evidence to indicate that defendant had sought to withdraw from the difficulty or leave the premises in the interval between the time he had kicked the glass out of the door and the beginning of the fight. In that situation it would seem that the jury could also reasonably have found that the encounter was a case of "mutual combat" and, in that event, the following would apply: "The evidence seems to show a common case in which two persons, upon a sudden quarrel, engage in mutual combat, and one is killed in the heat of the conflict. In such cases the offense is, at least, manslaughter." State v. Davidson, 95 Mo. 155, 158, 8 S.W. 413, 415.

■ It is admitted that defendant was a participant in a fight with deceased and it it not disputed that Fertig died as a result of injuries received in that altercation. Under all the facts and circumstances in evidence we think the jury could reasonably have found all of the elements required as a predicate for a conviction of the defendant of the offense of manslaughter. State v. Reeves, supra; State v. Davidson, supra; State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49; State v. Canton, Mo.Sup., 222 S.W. 448. We think it is also clear that the evidence of the State does not establish as a matter of law that the killing of deceased by defendant was in self-defense. The issue concerning defendant's justification in killing deceased in lawful self-defense was a question for the jury. That defense was properly submitted to the jury and it decided the issue adversely to defendant.

The cases cited by defendant in support of the foregoing assignment do not support his contention. In State v. Rash, 359 Mo. 215, 221 S.W.2d 124, the undisputed evidence of the State proved that defendant killed the deceased in self-defense. In that situation the court properly held that the trial court should have directed a verdict of acquittal. Also cited is State v. Canton, supra, which, on the facts, would seem to support the contention of the State that a submissible case of manslaughter was made against defendant, but the case was reversed and remanded because of an incorrect instruction on self-defense. It does not help the defendant.

Defendant next complains of the alleged error of the trial court in overruling his objection to certain remarks of the assistant prosecuting attorney in his closing argument to the jury. That contention is based upon the following: "Mr. Godfrey: Let me say this: I don't get a special badge for winning a case. I don't get a nickel extra —Mr. Rader: I object, your Honor, that is highly prejudicial, highly improper and its only purpose is to inflame the jury. The Court: The objection is overruled. Mr. Godfrey: I don't get a nickel extra or a new suit or a medal. I went there at five-thirty. Sure I did. I was an investigator. Mr. Rader: The State could offer the evidence and he could have testified. I am objecting to his telling what he did when he went to the police station, and I object to it as being highly prejudicial. The Court: The argument is in response to the argument of the defense. The objection is overruled." Defendant argues that the statement complained of was improper and prejudicial because it was not supported by the evidence and it created an inference that the prosecuting attorney knew more about the case than had been developed in evidence.

■■ In considering the foregoing contention it should be stated that there was evidence that Mr. Godfrey had gone to the police station on the early morning of Jan-

uary 29 and participated in taking the statement from defendant. It should also be stated that the quoted portion of the argument is the only part of the argument, either on behalf of the State or defendant, that appears in the transcript. It is somewhat speculative to suggest the motive of the assistant prosecuting attorney in making the statement under consideration. We do not think it may reasonably be construed as an indication that the attorney possessed undisclosed evidence tending to prove guilt. We regard it as an argument that this official had investigated and prosecuted the case solely because it was his duty to do so and not because he hoped for any reward. However, regardless of the construction that may be placed upon the statement, it should be noted that the trial court, in overruling the objection thereto, stated that it was in answer to the argument of the defense. If the remarks were in legitimate reply to the argument of defendant's attorney the defendant could not properly complain. The argument of defendant's attorney is not before us but it had been heard by the trial judge shortly before the ruling was made. In that situation we must, of necessity, rely largely upon the discretion of the trial court and there is nothing in the record before us to indicate that the trial court abused that discretion. State v. Reagan, Mo.Sup., 108 S.W.2d 391. We rule this point against defendant.

The final point briefed by defendant is that the court erred in overruling his objection to that part of the statement defendant gave to the police which recited that he had "dated" Mrs. Ballman for more than a year, and on about six occasions had gone with her to motels in the area and that they had had sexual relations on "some few occasions." The objection at the trial was that those recitals were irrelevant, immaterial, and highly prejudicial to defendant. The contentions urged here are that the portion of the statement complained of was not admissible because it was evidence of another crime and in any event was irrelevant.

Defendant does not state the crime he contends this evidence shows he had committed. We assume he had in mind either adultery or lewdness as defined in Section 563.150 RSMo 1949, V.A.M.S. However, since the improper conduct of the defendant and Mrs. Ballman did not appear to be "open and notorious" it would not seem that they were shown to be guilty of either of the misdemeanors specified. State v. Parker, 233 Mo.App. 1037, 128 S.W.2d 288; State v. Crenshaw, Mo.App., 17 S.W.2d 541.

■ We have concluded that the evidence under consideration was material and relevant and hence the trial court did not err in permitting it to be read to the jury. It had a definite relationship to the events which resulted in the death of Larry Fertig. That evidence explained the reason defendant followed the Ballmans to their home on the instant occasion. It further explained the fact that Mrs. Ballman invited defendant into their home for a drink, and no doubt accounted for the action of Mr. Ballman in revoking that invitation and refusing to permit defendant to enter the house. A knowledge of the relationship existing between Mrs. Ballman and defendant was helpful, if not essential, to a proper understanding by the jury of the events that culminated in the instant fight.

An examination of that part of the record relating to matters not required to be preserved in the motion for new trial or presented in the brief discloses no error. We have concluded that defendant was afforded a fair trial and that the judgment should be affirmed. It is so ordered.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.