STATE of Missouri, Respondent,

v.

Hosea JACKSON, Appellant.

No. 46502.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 15, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1983.

Application to Transfer Denied
Feb. 15, 1984.

Hosea Jackson, Stephen C. Wilson, Public Defender, Gary L. Robbins, Public Defender, 32nd Judicial Court, Jackson, for appellant.

Larry H. Ferrell, Pros. Atty., Cape Girardeau County, Cape Girardeau, John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

A jury convicted defendant of second degree murder for killing his live-in girlfriend of 12 years. The trial court imposed the jury's recommended punishment of 33 years imprisonment. We affirm.

Two days before her murder, victim and defendant had a fight. Defendant punched victim with his fists and victim struck defendant with a board. The following day victim obtained an ex parte protective order under the Adult Abuse Act. The order prohibited defendant from entering the house he shared with victim. When served with the order, defendant appeared not to understand but complied nevertheless. Victim spent that night with her parents.

The next afternoon, when victim's father went to her house to change the door locks, he discovered defendant there with victim. Defendant asked father if the locks were being changed to keep him away. As father began to remove the screws from the lock he heard defendant walk toward the kitchen. Father heard a shot and turned to see his daughter fall to the floor. Defendant walked toward father carrying a revolver and told father to close the door when he left. Defendant then walked from the house, closing the front door anyway. Victim died from a gunshot wound to the head.

Defendant testified he was at the house on the afternoon of the murder gathering

his personal belongings. He claimed victim came at him with the gun, they struggled, and the gun suddenly discharged, killing victim. Defendant admitted walking away from the shooting, but explained his flight was out of fear of what victim's former paramour, a policeman, would do to him upon learning of the incident.

■ Defendant claims the state failed to make a submissible case of capital murder, the crime charged. We find it unnecessary to review this point because the jury convicted defendant of second degree murder, a properly included lesser offense. *State v. Amos,* 553 S.W.2d 700, 706 (Mo. banc 1977). In any event the evidence more than suffices in supporting a conviction of second degree murder. *State v. Guyton,* 635 S.W.2d 353, 357–58 (Mo.App.1982); *State v. McGowan,* 621 S.W.2d 557, 559 (Mo.App.1981).

■ Defendant questions the propriety of the prosecutor cross-examining him concerning details of prior crimes he admitted committing. Defendant testified on direct examination to having been convicted in 1965 of assault with a deadly weapon. He explained his then girlfriend's mother objected to his planned marriage to her daughter. Defendant claimed his assault conviction was a result of a dispute with the mother and was caused when she reached into her purse for a pistol. At that point the trial court sustained the prosecutor's general objection.

On cross-examination the prosecutor asked several questions about the 1965 conviction. See generally *State v. Toliver,* 544 S.W.2d 565, 568–69 (Mo. banc 1976). On appeal defendant claims his most objectionable response was the statement, "the lady went into her pocketbook and came out with a gun." Unfortunately defendant did not bring his objection to the attention of the trial court. *State v. Simmons,* 500 S.W.2d 325, 328 (Mo.App.1973). Since defendant testified to those same facts on direct examination, no prejudice occurred. *State v. Tolliver, supra; State v. Williamson,* 584 S.W.2d 628, 630 (Mo.App.1979);

*State v. Payne,* 600 S.W.2d 94 (Mo.App. 1980).

■ Defendant claims reversible error by reason of the state's late endorsement of two witnesses. One week prior to trial the prosecutor learned of the two potential witnesses. They allegedly overheard defendant, two days before the murder, say in a bar, "that goddamn woman, she gonna make me do something bad to her." The prosecutor disclosed this information to defendant's lawyer two days before trial. Neither the prosecutor nor defense counsel succeeded in contacting one of the prospective witnesses, a resident of Shreveport, Louisiana. The other witness, interviewed by defendant's lawyer before trial, testified as to defendant's admission.

On appeal defendant does not present facts or argue the state intended surprise or acted in bad faith by the late endorsement of the witnesses. See, *State v. Smith,* 556 S.W.2d 70, 72 (Mo.App.1977). The scope of the witness's testimony was narrow. Defense counsel conducted an interview before trial. We cannot say the trial court abused its broad discretion by permitting endorsement of the witness and allowing her to testify at trial. *State v. Cameron,* 604 S.W.2d 653, 658 (Mo.App.1980).

■ Next defendant argues he was prejudiced by the trial court's ruling prohibiting reference to the victim as defendant's common law wife. Defendant admits to this court he and victim were not common law man and wife. See § 451.040(5) RSMo 1978. He asks us, however, to reverse his conviction so he can claim that status at the trial court level. Whatever appellation may have been employed, we feel the jury well understood the nature of defendant's 12 year illicit relationship with victim.

■ Defendant faults the trial court for sustaining the state's objection of his testimony he did not intend to kill victim. Before the prosecutor made his objection, defendant stated he did not go to their home with the intention of killing victim. Defendant also testified, without objection, he went to the house with the intention of

retrieving personal papers. No error occurred. *State v. Chamineak,* 343 S.W.2d 153 (Mo.1961).

Defendant argues hearsay testimony of the judge who issued the protective order to victim prejudiced him. Defendant called the judge as his own witness. The judge testified to having met defendant and victim about three weeks before the murder. At the meeting victim and defendant discussed with the judge the problems they were having. The judge then testified to meeting with victim when she applied for the protective order. He recalled she appeared excitable, very upset, talked very rapidly and appeared "strung out."

On cross-examination the judge stated he met with the couple after issuing the protective order to go over its "ground rules." On redirect examination the judge explained the protective order is issued solely upon the complaint of the victim. When recross-examined by the prosecutor, the judge was asked what victim had told him leading to the issuance of the protective order. Defense counsel's hearsay objection was overruled. In response to the question, the judge said victim told him she and defendant were not getting along. They fought often and he had hit her. Her nerves were shot; defendant was very jealous. Victim was afraid of defendant and they recently had a fight over a telephone conversation. She appeared upset. The judge advised her to seek medical treatment for her nerves. Further questions followed concerning victim's statements but defense counsel posed no objections.

■■■ First, we find no prejudice resulting to defendant from the prosecutor's line of questioning. The answers contained no material facts not admitted by defendant. Second, we find the answers admissible to show victim's state of mind a day prior to the murder, an exception to the hearsay rule, especially when defendant claims justifiable homicide or self-defense. *State v. Singh,* 586 S.W.2d 410, 417–19 (Mo.App. 1979) and *State v. Ford,* 639 S.W.2d 573 (Mo.1982).

■■■ Defendant contends the trial court abused the discretion entrusted to it by admitting into evidence three photographs of the victim. Two of the pictures, showing the location and nature of the fatal wound, were clearly relevant and not gruesome. *State v. Lehman,* 634 S.W.2d 542, 545 (Mo.App.1982). The third photograph depicts victim lying on an examining table in the morgue. The state on appeal attempts to justify the picture's admission into evidence with the ludicrous argument that "the arm of the body in the picture bore a large tag which instructed the hospital personnel not to clean or disturb the body as it was evidence in a homicide investigation." We fail to see any relevance to the exhibits' admission; however, we also fail to see any prejudice resulting to defendant. Insofar as the trial judge was in the best position to determine relevance and rule on admissibility, we defer in this instance to his discretion. No manifest error occurred.

■■■ We deny defendant's point regarding admissibility of diagrams of the residence and surrounding areas. The diagrams were not used to reflect the truth of matters depicted thereon. Rather, they were used as an aid to the jury in following the evidence. In such case the diagrams need not be drawn exactly to scale so long as the jury is not misled. *State v. Anderson,* 555 S.W.2d 362, 365 (Mo.App.1977).

■■■ Defendant claims, without recitation of authority, the ex parte protective order and return of service thereon constituted inadmissible hearsay. Defendant's failure to cite authority for his proposition provides grounds for dismissing this point without review. See *State v. Johnson,* 539 S.W.2d 493 (Mo.App.1976), *cert. denied,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). Suffice it to say the facts placed in evidence by the documents were merely cumulative of other evidence properly admitted. We find no abuse of the trial court's discretion. *State v. Merritt,* 542 S.W.2d 14, 16 (Mo.App.1976).

■ We deny defendant's allegation of error in the court's sustaining the prosecutor's objections to testimony by victim's father and daughter concerning family conversations relating to victim's murder and victim's drinking habits. The rulings did not unduly restrict defendant's right to cross-examine witnesses. The trial court has broad powers to preclude repetitive, harassing, and collateral testimony. *State v. Russell,* 625 S.W.2d 138, 141 (Mo. banc 1981).

■ Defendant complains the state went beyond the scope of an expert's report committed to defendant through discovery. A gun residue expert testified to his findings based on tests performed on the hands of victim and defendant. The tests showed defendant had recently fired a gun but victim had not. The expert also testified to a fact not in his report. He said the level of lead and copper found on defendant's hand significantly exceeded the level found on the general population. Defendant claims surprise on account of this revelation. Defendant, however, has been unable to show any fundamental unfairness by the state's failure to disclose this particular fact. *State v. Royal,* 610 S.W.2d 946, 951 (Mo. banc 1981). See also *State v. Tate,* 543 S.W.2d 514, 516 (Mo.App.1976).

■ Finally, defendant asserts plain error in the failure of the trial court to instruct on self-defense when it had instructed on excusable homicide. The only evidence of self-defense was supplied by defendant during his testimony. Accordingly, he was entitled to only one instruction. Counsel elected to offer an excusable homicide instruction. He can ask for no more. MAI–CR 2d 2.28. *State v. Henson,* 552 S.W.2d 378, 379 (Mo.App.1977).

Judgment affirmed.

DOWD, C.J., and SNYDER, J., concur.