**STATE of Missouri, Respondent,**

v.

**Eddie L. LUSTER, Appellant.**

**No. WD 39657.**

Missouri Court of Appeals,
Western District.

March 8, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 1988.

Application to Transfer Denied
June 14, 1988.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and TURNAGE and CLARK, JJ.

GAITAN, Presiding Judge.

The defendant/appellant, Eddie L. Luster, was found guilty following a jury trial of murder in the second degree, a class A felony, in violation of § 565.021, RSMo 1986, and armed criminal action, a class A felony, in violation of § 571.015, RSMo 1986. He appeals alleging the trial court erred in the following respects: (1) by admitting over objection statements made by the victim regarding her fear of defendant; (2) by admitting an involuntary statement made by defendant after his arrest; (3) by giving MAI–CR3d 300.02 and 302.04; (4) by allowing the State during voir dire to question the venire panel regarding their religious, moral and philosophical beliefs and the impact of same upon their ability to make a decision; (5) by permitting the State to question the venire panel during voir dire regarding their ability to assess life imprisonment; and (6) by failing to grant defendant's request of a judgment of acquittal at the close of all the evidence. We affirm.

Prior to trial, the defendant filed a motion to suppress statements. In his motion, the defendant alleged in part that his statement was involuntary because he was "suffering from knife wounds to his hands, face, ear and back and was not in physical condition to knowingly, understandingly, and voluntarily waive his constitutional rights." The defendant also filed a motion in limine seeking to bar introduction of testimony concerning prior violent acts of the defendant against the victim and the victim's complaints about the defendant. Several police officers testified regarding defendant's arrest and his refusal of medical treatment. Additionally they testified as to defendant's version of what happened. The defendant took the stand and told his version which was different. These motions were denied. The court found the officers' testimony to be more credible.

Thereafter, the defendant argued in support of his motion in limine, asserting that the testimony in question would inject evidence of the defendant's bad character and the victim's state of mind, a fact which was not in issue. The State argued that it wanted testimony of the victim's state of mind, namely her fear of the appellant, because it was relevant to the issues in the

case. The court overruled the defendant's motion in limine.

The defendant and his victim, Sherrie Stewart, were married in May of 1984, and during the marriage, had three children. In the summer of 1986, Ms. Stewart and the defendant permanently separated.

On Christmas Eve, Ms. Stewart moved to the home of Joyce Stewart, at 2315 Spruce. The victim left the house at 1:30 p.m. and returned at about 7:30 p.m. Bill Whitfield, Ms. Stewart's friend, who had come to visit from Texas, arrived at the house at about 7:00 or 7:30. The defendant telephoned, and Joyce Stewart answered the phone; the victim talked with him briefly. Joyce Stewart left the house at 9:30, and the defendant called again. The victim talked with him a moment or two in "a hard voice."

Ms. Stewart, Mr. Whitfield, and Ms. Stewart's three children went to bed in the same room, and Tamesa Stewart, the victim's eleven-year-old niece, was also asleep when she heard a knock on the door. It was the defendant at the door, and she let him in. The defendant asked for Ms. Stewart, and he followed Tamesa into the bedroom and flashed a lighter in Ms. Stewart's face. The defendant began to push Ms. Stewart's head against the wall, and he put both hands around her neck, choking her. With Tamesa's help, the victim was able to break loose, and she ran to the kitchen and obtained a knife. Ms. Stewart told the defendant to go home and leave her alone, but he said "if I can't have you, nobody else can", and threw a lamp at her. During a struggle, the defendant was cut three times, on his hand, arm, and below his eye.

The victim ran outside to the house next door, and the defendant followed her, where he took the knife away from her. The defendant said "now I'm going to show you how it feels to get stabbed with a knife", and stabbed her repeatedly, even though Ms. Stewart twice called for help.

Kansas City police officers arrived on the scene at 11:30 p.m. where they found Ms. Stewart lying on the porch at 2317 Spruce, unconscious and badly injured, with a weak pulse and eyes dilated. Ms. Stewart died at 2:37 a.m. on December 25, 1986. Dr. John Overman, Jackson County Assistant Medical Examiner, testified that she sustained nine stab wounds. Ms. Stewart was stabbed in her right shoulder, in the right side of her chest, twice in the left side of her abdomen, in her left arm, in her right hip, and three times in her back. Dr. Overman characterized the wound in her back which penetrated her chest wall and her aorta as fatal. She also sustained several crescent-shaped abrasions on the left side of her neck which Dr. Overman testified could have resulted from manual strangulation. The internal examination revealed a laceration of her liver, indicative of blunt trauma.

The defendant challenges in Point I the admission of the statements made by Ms. Stewart to her family and friends expressing her fear of the defendant. In Point II, the defendant alleges trial court error in the admission of evidence concerning Ms. Stewart's attempt to obtain an order of protection and the denial of that order.

Those statements and the circumstances leading up to them are reflected in the record as follows. Lisa Anderson, Ms. Stewart's co-worker at Newberry's Nursing Home, testified that on a night in September, 1986, she and Ms. Stewart were taken to work at 11:00 p.m. by Ms. Stewart's brother and male cousin. The defendant emerged from the darkness and ran up behind the two women, telling the victim he had seen her get out of a car with other men the night before and wanted to know why she was doing that to him. Ms. Stewart told the defendant to leave her alone, but in response, the defendant pulled Ms. Stewart down the steps and put both hands around her neck, choking her. Ms. Anderson grabbed the defendant and pushed him off of Ms. Stewart, but the defendant continued to pursue her and pushed her head into a window. Ms. Anderson pushed the defendant down the stairs, and she and Ms. Stewart were able to enter the building. That night, Ms. Stewart told Ms. Anderson that "she was scared of Eddie."

In November, 1986, Patricia Charles, Ms. Stewart's sister, received a telephone call from the defendant. Ms. Charles asked him to leave Ms. Stewart alone, telling him that they should both "go their separate ways." The defendant told Ms. Charles that Ms. Stewart was "his wife, and if he couldn't be with her, nobody else was."

Also in November, 1986, Joyce Stewart, another sister of the victim, went with the victim to the home she had shared with the defendant to obtain clothing for the children. That night, the defendant kicked and hit Ms. Stewart. Ms. Stewart told her sister that she did not trust the defendant anymore and that "he was sneaky."

On December 2, 1986, Ms. Stewart approached Karen White, the director of a domestic violence project called Project Assist, operated by Legal Aid of Western Missouri. Ms. Stewart told Ms. White that she was frightened of the defendant, and Ms. White explained to her the procedure for filing for an order of protection. Caterina Vittoria, an adult abuse clerk in Jackson County, testified that on December 2, 1986, she provided Ms. Stewart with a petition for a protective order and reviewed the form after Ms. Stewart had completed it. The order was denied because Ms. Stewart had sufficient earnings to make her ineligible for *in forma pauperis* status, and she failed to pay a filing fee.

Further, on December 15, 1986, Ms. Stewart told her sister, Ms. Charles, that she "was scared" of the defendant.

All of the evidence in dispute was admitted over the defendant's objection, after his motion in limine was overruled. On appeal, under both points, the defendant alleges that the admission of this evidence was highly inflammatory and prejudicial, and that the testimony was irrelevant because Ms. Stewart's state of mind was not in issue.

The trial court is vested with broad discretion in ruling on questions of relevancy of evidence, and an appellate court will not interfere with the trial court's ruling absent a clear showing of an abuse of discretion. *State v. Wood*, 596 S.W.2d 394, 402[20] (Mo. banc 1980), *cert. denied*, 449

U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980); *State v. Brown*, 718 S.W.2d 493, 493–494[1] (Mo. banc 1986). Whether or not evidence is relevant "depends upon whether it tends to prove or disprove a fact in issue or to corroborate evidence which is relevant and which bears on the principal issue." *State v. Clark*, 711 S.W.2d 928, 932[5] (Mo.App.1986).

In overruling the appellant's motion in limine, the court stated that, its ruling was not without limitation. The court stated that if the statements in question were made within the time frame of July to December, 1986, they would be admissible, but the court expressed concern about evidence becoming too remote in time. Prior to the introduction of the disputed testimony, the State summarized what it expected to hear from each witness and the court concluded that the statements were admissible as an exception to the hearsay rule because they demonstrated the deceased's state of mind.

■ It is widely recognized that declarations of a decedent demonstrating state of mind, where relevant, are admissible. *State v. Boliek*, 706 S.W.2d 847, 850[6] (1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 302, 93 L.Ed.2d 276 (Mo. banc 1986); *State v. Ford*, 639 S.W.2d 573, 574[1] (Mo.1982); *State v. Singh*, 586 S.W.2d 410, 419[14] (Mo.App.1979). Such testimony is relevant in instances where the defenses of self-defense, suicide or accident are employed. *State v. Singh*, *supra*, 586 S.W.2d at 419[14]. *See also State v. Jackson*, 663 S.W.2d 312, 316[8] (Mo.App.1983); *State v. Ford*, *supra*, 639 S.W.2d at 574–575[2].

The defendant alleges that the testimony was not relevant because "[t]he sole issues in this case were whether Eddie Luster was defending himself when he assaulted his wife with the knife, or whether his attack of her was the result of sudden passion arising from seeing her in bed with another man on Christmas Eve in the same room with his children."

When Ms. Stewart ran out of the house and to the porch of the neighbor's house, the defendant followed her, took the knife

away from her, and said "now I'm going to show you how it feels to get stabbed with a knife" as a prelude to the infliction of the fatal wounds. Twice Ms. Stewart called "help me", but the defendant continued to stab her. Since the defendant pushed his way into her bedroom and violently assaulted her prior to the introduction of the knife to the struggle, the question of who was the initial aggressor is at issue in assessing the defendant's claim of self-defense.

Those cases which justify the admission of the victim's prior statements of her fear of the defendant also justify the trial court's ruling concerning the victim's attempt to procure a protective order. In *State v. Jackson, supra*, 663 S.W.2d at 316[8], the court found no error in allowing testimony from a judge who had issued a protective order concerning the statements the victim had made the day before the murder. The court found that, particularly in view of a claimed defense of justifiable homicide or self-defense, this evidence concerning the victim's state of mind was clearly an exception to the hearsay rule. *Id. See also State v. Singh, supra*, 586 S.W.2d at 418–19. The same is true in this case, since the testimony concerning Ms. Stewart's petition for a protective order simply shows that she was in such fear of the defendant that she sought recourse in the courts.

In view of the relevancy of this testimony to the issues in the case, the defendant cannot demonstrate that any prejudice resulting from such evidence outweighed its probative value. Consequently, the trial court did not abuse its discretion in overruling the defendant's motion in limine and admitting this testimony.

In Point III, the defendant asserts that the trial court erred in denying his motion to suppress and admitting into evidence a statement made to homicide detective Douglas Bush on December 25, 1986. The defendant contends that his statement was involuntarily made because he was in pain and needed medical treatment at the time he talked with the police officer, but he was told "he could not see a doctor until he gave a statement."

A hearing was held on the defendant's motion to suppress the statement, and, at its conclusion, the trial judge overruled the motion. While finding that the evidence presented by the State and the defendant was in conflict "as to whether defendant was complaining of his wounds and pain from those wounds", the trial judge stated that he found the testimony of the police officers to be more credible than that of the defendant, and that the defendant's statement was voluntarily made with full understanding of his constitutional rights.

The admissibility of a statement or confession is within the trial court's discretion, and the only question for an appellate court is whether there is sufficient evidence to support the trial court's finding of voluntariness. *State v. Stokes*, 710 S.W.2d 424, 428–429[12] (Mo.App.1986); *State v. Brown*, 698 S.W.2d 9, 11[3] (Mo.App.1985). "The reviewing court is free to disregard contrary evidence and inferences, and is to affirm the trial court's ruling on a motion to suppress if the evidence is sufficient to sustain its finding." *State v. Stokes, supra*, 710 S.W.2d at 426[4]. The trial court's ruling should not be disturbed unless manifest error is apparent. *State v. Allen*, 684 S.W.2d 417, 422[8] (Mo.App. 1984).

■ Where a defendant is in police custody at the time the statement is made, the burden is upon the State to demonstrate that a statement or confession was voluntary. *State v. Baker*, 636 S.W.2d 902, 906[5] (Mo. banc 1982), *cert. denied*, 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983); *State v. Smith*, 735 S.W.2d 65, 68[8] (Mo.App.1987). The State meets this burden by proving by a "preponderance of the evidence" that the defendant was advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that the defendant, understanding his rights, declined to exercise them, *State v. Hughes*, 596 S.W.2d 723, 726[4] (Mo. banc 1980); *State v. Martin*, 702 S.W.2d 942, 947[8] (Mo.App.1986), and that the defendant was not deprived of his free will or coerced to such a degree that his will was

overborne. *State v. Diercks*, 674 S.W.2d 72, 78[6] (Mo.App.1984); *State v. Boyer*, 646 S.W.2d 876, 879[3] (Mo.App.1983).

■ Although the defendant had been injured and eventually received treatment in the hospital, those facts alone do not proscribe the use of his statement. *State v. Williams*, 566 S.W.2d 841, 844[5] (Mo. App.1978) (Defendant had kicked a police officer and was forcibly subdued by a nightstick blow to the head). *See also State v. Thomas*, 522 S.W.2d 74, 76[2] (Mo. App.1975) (defendant had been hospitalized for a gunshot wound); *State v. Maynard*, 707 S.W.2d 810, 813–814[4] (Mo.App.1986) (defendant had been struck in the head by the arresting officer); *State v. Smith*, 727 S.W.2d 188, 191[4] (Mo.App.1987) (defendant was diabetic and in need of insulin which, allegedly, impaired his judgment and mental ability). The standard for determining voluntariness is whether there was coercive police activity; the defendant's mental condition, "by itself and apart from its relation to official coercion," should never end an inquiry into voluntariness. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 520[3], 93 L.Ed.2d 473.

Moreover, in assessing the defendant's claim that he made the statement because it was the only way he could obtain medical treatment, it must be noted that when the paramedics and, later, the hospital personnel, attempted to treat the defendant, he became abusive and refused treatment. In ruling on the motion to suppress, the trial judge found it significant that the defendant had first refused treatment at the hospital but then insisted that he was asking for treatment.

Any contradictions between the testimony of the police officers and that of the defendant, along with the credibility of the witnesses is to be resolved by the trial court. *State v. Stokes, supra,* 710 S.W.2d at 428[12]; *State v. Martin, supra,* 702 S.W.2d at 947; *State v. Sherrill,* 657 S.W. 2d 731, 739[24] (Mo.App.1983); *State v. Helm,* 624 S.W.2d 513, 515[1] (Mo.App. 1981). In assessing the credibility of the witnesses, the trial court "could accept the testimony of the officers and reject that of

the defendant." *State v. Diercks, supra,* 674 S.W.2d at 78[7]. There was no error in overruling the defendant's motion to suppress, for the trial court accepted the testimony of the police officers and found the defendant's testimony was not credible as did the jury. *See State v. Ritter,* 644 S.W. 2d 387, 390[5] (Mo.App.1982); *State v. Helm, supra,* 624 S.W.2d at 516[4].

The State fulfilled its burden, the trial court's decision to overrule the defendant's motion to suppress the statement was correct and the statement was appropriately admitted into evidence.

In Point IV of his brief, the defendant asserts that the trial court erred in submitting to the jury MAI–CR3d 300.02 and 302.-04. This question has been resolved by the Missouri Supreme Court, *en banc*, which ruled that the "firmly convinced" language is similar to the definition employed in federal courts, and that these instructions, when read as a whole, "properly instruct the jury upon the standard which they are to use in determining the defendant's guilt or innocence." *State v. Guinan,* 732 S.W.2d 174, 178[6] (Mo. banc 1987). Since this Court is bound by the last controlling opinion of the Supreme Court of Missouri, *State v. Dunn,* 615 S.W.2d 543, 550[15] (Mo.App.1981); *State v. Jones,* 703 S.W.2d 41, 42[1] (Mo.App.1985), the defendant's argument on this point must fail.

In Point V, the defendant challenges the trial court's decision to overrule his objection to the following question asked by the prosecuting attorney:

\*　　\*　　\*　　\*　　\*　　\*

Is there any member of the panel for any reason, moral, religious, philosophical, for any reason feel you cannot sit in judgment on another human being?

Two jurors responded to this question. One, Mr. Barnett, was receiving counseling for post traumatic stress disorder. He stated he could not sit and judge others.

Another venireperson, Mrs. Souza, also responded to this question. However, she had earlier indicated to the court that she was "not allowed by religious convictions to judge any other person ... of their guilt

or innocence" in response to the Court's question of whether the jurors could follow the court's instructions.

■ The testimony of both venirepersons reveals that this question resulted in the identification of two potential jurors who, for personal reasons, would have been unable to follow the court's instructions in the case. As it has long been recognized, the "purpose of voir dire is to determine the ability and willingness of veniremen to follow the law and evidence," and wide latitude is afforded counsel to determine any bias among the venire members. *State v. Roberts*, 709 S.W.2d 857, 866[7] (Mo. banc 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986). The control of voir dire rests within the discretion of the trial court. *Id.; State v. Hobby*, 706 S.W.2d 232, 233 (Mo.App.1986). Included in the trial court's domain is broad discretion in determining the nature, extent and propriety of questions asked of the venire panel. *State v. Smith*, 649 S.W.2d 417, 428[17] (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed. 246 (1983). Rulings of the trial court during voir dire are to be disturbed on appeal only when the record shows an abuse of discretion, and the burden is on the complaining party to demonstrate a real probability of injury. *State v. Norton*, 681 S.W.2d 497, 498[3] (Mo.App.1984).

Further, the question complained of by the defendant has previously been upheld. In *State v. Wilson*, 554 S.W.2d 511, 513[1] (Mo.App.1977), the defendant complained of this question posed by the prosecuting attorney on voir dire:

> [D]o you have any moral, religious or conscientious scruples which would make it difficult or prejudice your make it impossible for you to sit and render a judgment against your fellow man? ...

This Court concluded that this question "represented a proper effort to ascertain any preconceptions or predispositions which might prevent an open minded consideration of the case." *Id. See also State v. Robinson*, 616 S.W.2d 849, 850–51 (Mo. App.1986). The defendant's argument on this point is without merit.

In his sixth point on appeal, the defendant alleges that the trial court erred in overruling his objections made during the State's voir dire concerning whether the venire members could consider life imprisonment as punishment in the event they were convinced of the defendant's guilt beyond a reasonable doubt. The defendant alleges that this questioning was improper because it sought a commitment from the jury.

■ The trial court has broad discretion in controlling voir dire examination. *State v. Roberts, supra*, 709 S.W.2d at 866[7]. In this case, it is apparent that the trial court did not abuse its discretion, since the prosecutor's question did not seek to commit the jury to a finding of life imprisonment as the appropriate punishment. "It is true that a juror may not be asked what verdict he would vote if certain facts were shown." *State v. Green*, 511 S.W.2d 867, 872[4] (Mo.1974). *See also State v. Antwine*, 743 S.W.2d 51, 58 (Mo. banc December 15, 1987). However, this was not the nature of the prosecutor's questioning; rather, he attempted to determine whether the venire members would be able to follow the court's instructions. The full range of punishment for both murder second degree and armed criminal action included life imprisonment. As the Supreme Court concluded in *State v. Antwine, supra* at 60–61 the State's inquiry "was not a request for commitment, but a proper investigation into whether the prospective jurors could consider all penalties." *Accord State v. Rodden*, 728 S.W.2d 212, 221[8] (Mo. banc 1987).

In his final point, the defendant challenges the sufficiency of the evidence to support his conviction of murder in the second degree, in violation of § 565.021, RSMo 1986. The defendant's challenge rests solely upon the allegation that the State failed to prove the absence of "sudden passion". Although the defendant alleges error in overruling his motion for acquittal at the close of the State's evidence, the defendant subsequently presented evidence, and consequently, since he elected not to stand on his motion for judg-

ment of acquittal at the close of the State's case, "the submissibility of the case is determined by analysis of all the evidence." *State v. Parcel*, 546 S.W.2d 571, 573[4] (Mo.App.1977).

█ Based upon the facts presented, there is no support for the defendant's assertion that he acted under the influence of sudden passion. The defendant entered the house where his estranged wife was staying without invitation and without warning. The events which unfolded resulted from the defendant's conduct. However, even if the defendant's assertion that he initially reacted to seeing Ms. Stewart in bed with another man is accepted, the record reveals that there were several breaks in the chain of events which would have allowed a reasonable person a time for reflection on his actions. However, the defendant, in each instance, renewed his pursuit of the victim and continued to struggle with her until he ultimately took her life.

The defendant's reliance on *State v. Fuller*, 302 S.W.2d 906 (Mo.1957) is misplaced. There the defendant challenged the sufficiency of the evidence to support his conviction of manslaughter. The court concluded that,

> [s]ince the jury could reasonably have found that the wrongful conduct of defendant provoked the difficulty, then, even if we assume that deceased thereafter attacked defendant and that it became necessary for defendant to take the life of deceased in order to save his own, he would nevertheless be guilty of manslaughter.

*Id.* at 908–909[2]. Quite to the contrary of the defendant's assertion, *Fuller* does not support a finding that the facts presented in this case should result in a finding of "mere manslaughter", but rather, holds that the crime described in *Fuller* would, *at a minimum*, constitute manslaughter.

Because the evidence was more than sufficient to support the defendant's conviction for murder in the second degree, the trial court did not err in overruling the appellant's motion for judgment of acquittal.

The judgment of the trial court is affirmed.

All concur.